UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JAMES A. BOYD *et al.*, | ) |
| Plaintiffs, | ) ) ) |
| v. | ) No. 2:05-CV-227 PPS APR ) |
| JUPITER ALUMINUM CORPORATION, | ) ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiffs James Boyd, Joshua Turner, and Hector Tiscareno allege that Defendant Jupiter Aluminum Corporation has violated the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*. Plaintiffs seek to prosecute this matter as a collective action under 29 U.S.C. § 216(b). Before the Court is Plaintiffs' motion for an order to authorize notice to similarly-situated persons pursuant to § 216(b). [DE 15] For the reasons that follow, Plaintiffs' motion is granted.

## BACKGROUND

Defendant Jupiter Aluminum Corporation operates an aluminum processing plant in Hammond, Indiana. The plant processes scrap aluminum for resale to manufacturers. According to Jupiter, approximately 112 hourly employees work at the plant in one of eleven departments. Plaintiffs work (or used to work) in two of the eleven departments: the cold mill and the furnace department. Plaintiffs Boyd and Turner work in the cold mill department, which, according to Jupiter's plant manager, employs twenty-two people currently. Plaintiff Hector Tiscareno worked in the furnace department before he left Jupiter in June 2005. Jupiter's plant manager

attests that eighteen employees currently work in the furnace department. Jupiter compensated Plaintiffs (and continues to compensate Turner and Boyd) on an hourly basis.

Plaintiffs allege that Jupiter violated the FLSA by not paying Plaintiffs an overtime wage for all of the overtime hours they worked.[1] Specifically, Plaintiffs allege that Jupiter did not compensate Plaintiffs: 1) when they were required to be at their workstations before the start of their shifts; 2) when they were required to work through certain lunch periods; 3) when they were required to attend certain work-related meetings; and/or 4) for time spent donning and doffing protective garments and then walking to their work area. Plaintiffs believe they were not the only Jupiter employees allegedly shorted overtime pay and, thus, they seek to prosecute the case as a collective action under 29 U.S.C. § 216(b). Plaintiffs have asked the Court to authorize notice of this lawsuit to be sent to all persons employed by Jupiter in any hourly production position since October 2002.

In support of their motion, Plaintiffs each submitted an affidavit and attested to the following facts (some of which Jupiter disputes). As a threshold matter, all three Plaintiffs attest that, regardless of how much time they actually worked on a given day, they were paid according to the length of their shift less one half-hour for a lunch break. [DE 15, Exs. A-C]

Plaintiff Boyd has worked in Jupiter's cold mill since September 2002. Shortly after he started at Jupiter, Boyd's supervisor Rich Singer instructed him that he had to be at his workstation before the start of the shift to do pre-work maintenance. Boyd obeyed this instruction and usually arrived at his workstation ten minutes before the start of his shift. Boyd often saw other employees on his shift beginning work early as well. Also, Boyd and his fellow

---

[1] Plaintiffs also assert a separate state law claim under Indiana's Wage Payment Act.

shift-workers periodically had to work through their half-hour lunch break. Even when Boyd worked through his lunch break, a half-hour was deducted from his work hours for the day. In addition, Boyd from time to time attended mandatory work-related meetings at Jupiter. Some of the meetings involved only Boyd's shift; others were company-wide meetings. Boyd was compensated for his attendance at some but not all of these meetings. Boyd estimates that he attended three to four mandatory meetings for which he was not compensated. [DE 15, Ex. A]

Plaintiff Turner has worked in the cold mill since June 1999. Early in his employment at Jupiter, supervisor Singer told Turner that if he ever wanted to be a mill operator (a higher position than the one Turner held at the time), then Turner had to be on the floor working fifteen minutes before the start of his shift. After that conversation Turner began to arrive at the mill, on average, about ten to fifteen minutes before the start of his shift. Other employees on Turner's crew also arrived for work before the start of the shift. Turner further attests that "we" were supposed to receive a half-hour lunch break but periodically "we would have to work through lunch." Nevertheless, on those days, "a half an hour would still be deducted from workhours." Turner, like Boyd, also attended mandatory company meetings, some of which included only his crew or shift while others were company-wide. Since 2002, Turner estimates that he attended a dozen or more mandatory work meetings for which he was not paid. [DE 15, Ex. C]

Plaintiff Tiscareno worked in Jupiter's furnace department from February 2004 to June 2005. The furnace is used to melt scrap aluminum so that it can be processed in other parts of the plant. Furnace workers were required to wear heat resistant clothes and equipment. It took Tiscareno approximately five to eight minutes to don these materials before the start of his shift and another five to eight minutes to doff them once his shift ended. In addition, it took

3

Tiscareno and his fellow workers approximately three minutes to walk from the locker room to the furnace area, and another three minutes to walk back after their shift. Moreover, Tiscareno's lead man instructed Tiscareno and his fellow co-workers that they had to be at the furnace no later than ten minutes before the start of the shift to perform pre-shift checks. Neither the time spent donning and doffing the protective gear, the time spent walking to and from the furnace, nor the time spent doing pre-shift checks was compensated. Finally, at certain times, Tiscareno and his fellow furnace workers were "not permitted to take lunch." [*Id.*, Ex. B]

## LEGAL STANDARDS

The FLSA requires employers to pay at least time-and-a-half for any overtime hours that qualified employees work during a week. 29 U.S.C. § 207(a)(1). Under 29 U.S.C. § 216(b), an employee may bring an action to recover unpaid overtime compensation on "behalf of himself . . . and other employees similarly situated." This is known as a "collective action." *Harkins v. Riverboat Services, Inc.*, 385 F.3d 1099, 1101 (7th Cir. 2004). However, no employee may be a party plaintiff to a collective action "unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).

Collective actions under the FLSA are fundamentally different than class actions under Fed. R. Civ. P. 23. Plaintiffs in a collective action must "opt-in" to the action to be bound by a judgment while plaintiffs in a Rule 23 class action must "opt-out." *See King v. General Electric Co.*, 960 F.2d 617, 621 (7th Cir. 1992); *Woods v. New York Life Ins. Co.*, 686 F.2d 578, 580 (7th Cir. 1982). Because of the "opt-in" requirement, a representative plaintiff in a collective action has to be able to inform other individuals who may have similar claims that they may join his lawsuit. *Austin v. CUNA Mutual Ins. Co.*, 232 F.R.D. 601 (W.D. Wis. 2006).

4

Section 216(b) does not provide explicitly for court-ordered notice. Nonetheless, the Supreme Court has held that, in appropriate cases, district courts have the discretion to implement § 216(b) by facilitating notice to potential plaintiffs. *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989). Such court-authorized notice serves the broad, remedial purpose of the FLSA and comports with the court's interest in managing its docket. *Id*. at 172-74.

The FLSA neither defines the term "similarly-situated" nor instructs courts when to exercise their discretion and authorize notice to potential plaintiffs. Nevertheless, a majority of federal courts have adopted a two-step approach. The first step requires Plaintiffs to make a modest factual showing that they and the other employees to whom notice is to be sent were victims of a common policy or plan that violated the law. *See, e.g., Sipas v. Sammy's Fishbox, Inc.*, 2006 WL 1084556, *2 (S.D.N.Y. Apr. 24, 2006); *Kreher v. City of Atlanta*, 2006 WL 739572, *2 (N.D. Ga. 2006); *Austin v. CUNA Mutual Ins. Co.*, 232 F.R.D. 601, 605 (W.D. Wis. 2006); *Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 865 (S.D. Ohio 2005); *Hunter v. Sprint Corp.*, 346 F. Supp. 2d 113, 117 (D.D.C. 2004); *Mielke v. Laidlaw Transit*, 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004)*; Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003); *Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998).

If Plaintiffs make this modest factual showing, then notice and an opportunity to "opt in" can be sent to those employees who are similarly situated to the named Plaintiffs. *See Cameron-Grant v. Maxim Healthcare Servs.*, 347 F.3d 1240, 1243 n.2 (11th Cir. 2003); *Flores*, 289 F. Supp. 2d at 1045; *Austin*, 232 F.R.D. at 606. The action then proceeds through discovery as a representative or collective action. Though lenient, the "modest factual showing" standard is not

a mere formality. *See, e.g., Flores*, 289 F. Supp. 2d at 1045-46 (evidence of defendant's payment practice concerning two out of 50 employees without more did not provide modest factual showing that employer had a common policy or plan to violate the FLSA).

The second step of the analysis occurs at the close of discovery when the defendant can move to dismiss the opt in plaintiffs in light of the record developed during discovery. *See, e.g., Cameron-Grant*, 347 F.3d at 1243 n. 2; *Hunter*, 346 F. Supp. 2d at 117; *Flores*, 289 F. Supp. 2d at 1045. In such a case, the court must determine whether the plaintiffs who have opted into the lawsuit are, in fact, similarly-situated to the representative Plaintiffs. *Id*. If the court finds that any of them are not similarly-situated to the representative Plaintiffs, they are dismissed from the lawsuit without prejudice. *Id; Kane v. Gage Merchandising Services, Inc*., 138 F. Supp. 2d 212, 214 (D. Mass. 2001).

For now, the Court need not go past step one. The issue for present purposes is whether Plaintiffs have made a modest factual showing that they and all other hourly employees at Jupiter were victims of a common policy or plan that violated the law.

## **ANALYSIS**

Plaintiffs have satisfied their minimal burden at this stage of the proceedings to warrant court-authorized notice. The three named Plaintiffs each submitted a detailed affidavit and each of them attests that: 1) they were instructed by a supervisor or lead man to be at their workstations before the start of their shifts; 2) they periodically had to work through their half-hour lunch breaks; and 3) they were not compensated for this time. [DE 15, Exs. A-C] Boyd and Turner both declare that other workers on their shift began work early just like they did. [*Id*., Exs. A, C] Boyd and Turner also state that they attended mandatory work meetings for

6

which they were not paid. Moreover, Tiscareno declares that his fellow furnace workers were required to be at the furnace no later than ten minutes before the start of their shift. [*Id*., Ex. B] In addition, according to Tiscareno, it took he and his co-workers as long as ten minutes to get into their heat resistant clothes and make their way to the work station meaning they were working an extra twenty minutes a day without being compensated. Jupiter disputes these claims and may very well prevail at the end of the day. At this juncture, however, Plaintiffs have made a modest factual showing that Jupiter had a common policy that violated the FLSA.

Jupiter makes several arguments in opposing notice. First, Jupiter argues that Plaintiffs have not made a modest factual showing that all Jupiter hourly employees were subject to a single common policy. For instance, Jupiter claims there is no evidence that other employees besides the named Plaintiffs were ordered to be at their workstations before the start of their shifts. [DE 17 at 6] The evidence is simply to the contrary. For example, Tiscareno states point blank that he "*and [his] fellow workers* were required to be at the furnace no later than about ten minutes before the start of the shift . . . ." [DE 15, Ex. B (emphasis added)] Even without this evidence, Plaintiffs have met the minimal burden required at the notice stage. Boyd and Turner attest that they were instructed to be at their workstations before the start of the shift and that they observed their co-workers show up early as well. The Court is willing at this stage of the case to accept the inference that their co-workers were showing up early for the same reason Boyd and Turner showed up early, *i.e.* because they were told to do so. Plaintiffs' showing is enough to trigger notice.

Jupiter next argues there is no common plan because the Plaintiffs' affidavits themselves differ in certain respects. For example, Jupiter argues that Boyd was told to be at his workstation

7

before the start of the shift, while Turner was told to arrive at his workstation early only if he wanted to advance in the company. Jupiter also emphasizes that Boyd was not given a specific time by which to arrive, while Turner was told specifically to arrive fifteen minutes early.

These are distinctions without a difference. Both Boyd and Turner were told to show up early for work and both employees claim that they were not paid for this time. It is true that Singer told Boyd to be at his workstation "early" while his directions to Turner to be at work "15 minutes early" were more specific. But this distinction is so thin as to be nearly imperceptible. It certainly does not bar the two from being deemed similarly situated. Likewise, the Court reads the directive given to Turner – that he must show up early if he ever wants to get promoted – as similar to the directive given to Boyd – that he simply must show up early. Any difference between the two is a trifle and is not substantial enough to preclude notice at this point of the case.

Third, Jupiter urges that notice is improper because individualized issues would overwhelm any collective action and destroy any efficiencies of scale. But this puts the cart before the horse. Ultimately, Jupiter may be right, but at this stage all Plaintiffs have to make is enough of a showing to justify notice. Issues relating to whether the collective action is the best way to proceed can be decided later after the facts have been fleshed out in discovery. In *Wertheim v. Arizona*, No. CIV 92-493, 1993 WL 603552 (D. Ariz. Sept. 28, 1993), a case cited by both parties, the court found that "[a]ll that need be shown by the plaintiff is that some identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad

8

remedial policies underlying the FLSA." *Id*. at *3. Plaintiffs have done so here through their detailed affidavits.

It is impossible at this stage of the litigation for the Court to determine whether all potential class members are in fact "similarly situated" to Plaintiffs. But this is why Jupiter can move to dismiss any "opt in" plaintiffs if discovery reveals that they are not similarly situated to the named Plaintiffs. *See Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 56 (S.D.N.Y. 2005) ("[T]he issue of who is entitled to receive notice at this stage of the proceedings is not conclusive and is subject to modification should further discovery prove that all plaintiffs are not in fact similarly situated.").

Fourth, Jupiter argues that affidavits from two cold mill employees and one furnace employee do not justify notice to all of Jupiter's hourly employees throughout all eleven departments. Jupiter again sets the bar too high. Plaintiffs need not present an affidavit from an employee in every single department to justify notice to the entire plant. Plaintiffs have submitted evidence that Jupiter maintained a practice to pay its hourly employees based on the length of their shift regardless of the actual time worked. Plaintiffs have made a modest factual showing that this practice did not always compensate Jupiter's hourly employees for all of the time that should have been compensated and that this practice affected other employees. This is enough to warrant notice.

The cases that Jupiter relies on are distinguishable. For instance, in *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 413 (D. Or. 2002), the employees in the proposed class were employed by different subsidiaries and affiliates of the defendant, they worked at nine different job sites, and their method of compensation ranged from piece-rate to hourly to salaried. *Id*. at 413. In

9

*England v. New Century Fin. Corp.*, 370 F. Supp.2d 504, 506 (M.D. La. 2005), the plaintiffs sought to institute a collective action on behalf of a group of loan officers who worked in approximately 80 different branches across 30 different states. The *England* court refused notice under § 216(b) because "because each [claim] has unique facts based on local conditions in different localities." *Id*. at 511. In *Basco v. Wal-Mart Stores, Inc.*, 2004 WL 1497709, *8 (E.D. La. July 2, 2004), the plaintiffs sought to notify over 100,000 current or former employees of all Wal-Mart and Sam's Club stores in Louisiana, even though they "performed different jobs at different geographic locations and were subject to different managerial requirements."

Plaintiffs here are much different. They seek to notify a relatively small class of hourly employees at a single plant in a single city under a single plant manager. Plaintiffs have presented evidence that employees in multiple departments of the plant were paid strictly according to the length of their shift less one half-hour for lunch, even though they were required to be at their workstation before the start of their shift and they occasionally worked through or during their lunch breaks. Moreover, it is not as if the departments in which Plaintiffs worked were minor departments that comprised a tiny percentage of the plant's hourly workforce. Quite the opposite, Jupiter's plant manager attests that the two departments represented by Plaintiffs (the cold mill and the furnace) are among the largest departments at the Jupiter plant in terms of number of employees. [DE 17-2 at ¶ 3] In fact, between 2003 and 2005, the cold mill and furnace departments accounted for between 35-40% of the plant's hourly employees. *Id*.

Finally, Jupiter objects to the notice proposed by Plaintiffs. The Seventh Circuit has cautioned district courts when authorizing notice in a collective action to avoid any judicial sponsorship of plaintiffs' claims. *See Woods v. New York Life Ins.*, 686 F.2d 578, 581 (7th Cir.

1982). For example, in *Woodall v. Drake Hotel, Inc.*, 913 F.2d 447, 451 n.4 (7th Cir. 1990), the Seventh Circuit prohibited notice from being sent on a court's letterhead and over the clerk's signature "so as to avoid judicial imprimatur of approval."

Here, Jupiter argues that the case caption in Plaintiff's proposed notice is tantamount to court letterhead because it "still looks to a layperson like an official document from a court." [DE 17 at 18] The Court disagrees. The use of a case caption in Plaintiff's proposed notice does not suggest any judicial sponsorship of Plaintiffs' claims in the case. Even if it did, the effect of any such suggestion is cured by the disclaimer in boldface at the end of the notice, which states unequivocally that the Court takes no position as to the merits of Plaintiffs' claims (or Jupiter's defenses for that matter). Furthermore, Plaintiffs cite to several district court decisions that have authorized § 216(b) notices which contained the case caption. Thus, the Court hereby approves the form notice proposed by Plaintiffs with the following changes: that the names "Judge Simon" and "Magistrate Judge Rodovich" be deleted from the caption and that the disclaimer in boldface be moved to page one of the notice.

Jupiter also objects to the language in paragraph six of the proposed notice, which advises recipients that they will not be affected by any judgment or settlement rendered in the case if they choose not to join the suit. Jupiter correctly points out that while this may be accurate as to the federal claims at issue in the case, it is not accurate as to the state law claim under the Indiana Wage Payment Act, which, if certified as a class action, would be governed by Fed. R. Civ. P. 23. As explained above, any class member in a Rule 23 class action must "opt-out" of the case in order not to be affected by any judgment or settlement rendered on the class action claim. Plaintiffs do not address this objection in their reply. The Court agrees with

Jupiter and orders Plaintiffs to revise the first sentence of paragraph six to read as follows: "If you choose not to join the suit, you will not be affected by any judgment or settlement rendered in this case with respect to any claim under the Fair Labor Standards Act."

## **CONCLUSION**

Based on the foregoing, Plaintiffs' motion for court-authorized notice [DE 15] is granted. Jupiter is **ORDERED** to produce to Plaintiffs' counsel by June 20, 2006 the names and last known addresses of all potential class members. Plaintiffs are authorized to send notice to the class as proposed in Exhibit E to their motion, subject to the modifications set forth above.

**SO ORDERED.**

Dated: May 31, 2006

                                          s/ Philip P. Simon
                                          PHILIP P. SIMON, JUDGE
                                          UNITED STATES DISTRICT COURT